*877 OPINION

Per Curiam:

The primary issue raised in this original petition is whether the current version of NRS 295.056(3), which requires initiative petitions that propose constitutional amendments to be submitted for signature verification “not later than the third Tuesday in May,” is constitutional in light of Article 19, Sections 2(4) and 3(2) of the Nevada Constitution. Article 19, Section 2(4) requires that initiatives proposing to amend the constitution must be filed with the Secretary of State within a certain period of time before a general election. Under Article 19, Section 3(2), additional time may be added to what is otherwise provided for in Article 19 for the enactment of a submission deadline, which is the deadline reflected in NRS 295.056(3). Thus, to determine whether NRS 295.056(3) is constitutional, we must interpret Article 19, Sections 2(4)’s and 3(2)’s language.
When Section 2(4) is read in conjunction with Section 3(2), Section 2(4)’s language is rendered ambiguous because there appears to be more than one reasonable interpretation of Section 2(4)’s language. One reasonable interpretation of Section 2(4) creates a fixed filing deadline, but a second equally reasonable interpretation allows for a flexible filing deadline. Since the constitutional provision’s language is ambiguous, we review the legislative history of each constitutional provision and the statutory provision at issue, as well as Article 19’s constitutional scheme, in an effort to harmonize Sections 2(4) and 3(2) to give Section 2(4)’s language its proper interpretation and effect.
In light of the legislative history and considering Article 19’s constitutional scheme as a whole, we determine that Section 2(4)’s *878 language establishes a fixed filing deadline. Thus, the time period stated in Section 3(2) may be added to the fixed filing deadline under Section 2(4) to give the Legislature a specific block of time within which it may establish a submission deadline for signature verification.
Accordingly, we conclude that NRS 295.056(3) impermissibly restricts the powers reserved to the people under Article 19 by establishing a submission deadline earlier than what is otherwise permitted by Article 19, Sections 2(4) and 3(2) of Nevada’s Constitution and thereby directly inhibiting the initiative process. NRS 295.056(3) is therefore unconstitutional, and we grant the petition for a writ of mandamus.

RELEVANT FACTS AND HISTORY

In September 2007, petitioner We the People Nevada, a political action committee, through its chair Sharron Angle, filed with respondent Secretary of State its initiative petition entitled “The Nevada Property Tax Reform Initiative for Nevada.” The initiative was challenged twice in district court, and each time the challenger stipulated to dismiss its challenge in exchange for We the People’s withdrawal of the initiative. Subsequently, in February 2008, We the People filed a third initiative petition that was not challenged, and it began circulating that initiative for signatures.
NRS 295.056 required We the People to submit in proper form the requisite number of valid signatures to the county clerk’s office in each county where signatures were collected by May 20, 2008. According to We the People, the individual delivering the required documentation to the Clark County Clerk’s Office missed the deadline. Moreover, We the People acknowledges that it did not have enough signatures by May 20 to have the initiative certified for the November 2008 ballot.[2] Although We the People missed the deadline for submitting the signatures that it collected, the Clark County Clerk accepted the documentation. Nevertheless, after the Clark County Clerk apparently transmitted the documentation to the Secretary of State, the Secretary of State rejected the signatures as untimely. This writ petition followed. The Secretary of State has filed an answer, as directed.[3] We the People was permitted to file *879 a reply that includes documentation indicating that after it filed its writ petition with this court, it recirculated its initiative and gathered additional signatures. The additional signatures were submitted to the Washoe and Clark County clerks for verification in the event that this court declares NRS 295.056(3) unconstitutional, which, according to We the People, would revive the statutory provision’s former version under which the deadline was June 17, 2008. Ultimately, We the People requests that this court declare NRS 295.056(3) unconstitutional and issue a writ of mandamus or prohibition compelling the Secretary of State to accept all initiative petitions filed up to and including June 17, 2008.

DISCUSSION

In resolving this writ petition, we first address whether writ relief is available. After concluding that our extraordinary intervention is warranted, we consider the provision’s constitutionality in light of Article 19, Sections 2(4) and 3(2). In doing so, we first review each constitutional provision’s plain language to determine whether the provisions can be applied in accordance with their plain meaning. Because, however, there is more than one reasonable interpretation of Section 2(4)’s language and the application of each interpretation renders inconsistent results, we turn to the legislative history of each constitutional provision and the statutory provision at issue and consider Article 19’s constitutional scheme to give Section 2(4)’s language its proper interpretation and effect. Considering the legislative history and constitutional scheme, we conclude that NRS 295.056(3) is unconstitutional because it establishes a submission deadline earlier than what is otherwise allowed by Article 19, Sections 2(4) and 3(2) of Nevada’s Constitution.

Standard for writ relief

A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station, or to control a manifest abuse of discretion.[4] Mandamus’s counterpart, the writ of prohibition, is available to arrest the extrajurisdictional exercise of judicial functions.[5] Writs of mandamus and prohibition are generally available when no plain, *880 speedy, and adequate legal remedy exists.[6] Both mandamus and prohibition are extraordinary remedies, and whether a petition will be considered is within our sole discretion.[7] In particular, we may exercise our discretion to issue a writ when “an important issue of law needs clarification and public policy is served by this court’s invocation of its original jurisdiction”[8] or when a writ petition raises an issue that presents an “urgency and necessity of sufficient magnitude”[9] to warrant our consideration. As the petitioner, We the People bears the burden to demonstrate that our intervention by way of extraordinary relief is warranted.[10]
We the People asserts that writ relief is warranted because this writ petition’s resolution will determine the constitutionality of the Legislature’s 2007 amendment to NRS 295.056(3), which moved the submission deadline for initiative petitions earlier in the year by approximately 30 days. Indeed, this writ petition raises issues of significant magnitude as the resolution potentially has an impact on this year’s election as well as future general elections because our consideration will resolve the parameters for legislative enactment of a submission deadline. Thus, we conclude that this court’s extraordinary intervention in this matter is warranted.[11]

Principles of constitutional and statutory interpretation

Resolution of this petition depends upon the interpretation of NRS 295.056(3) and two constitutional provisions, Article 19, Sections 2(4) and 3(2). In discerning their meaning, we rely on well-established precepts of statutory and constitutional construc *881 tion. In the context of a writ petition, a statute’s interpretation is reviewed de novo.[12] The rules of statutory construction apply to the interpretation of a constitutional provision.[13] Unless ambiguous, a statute’s language is applied in accordance with its plain meaning.[14] When the Legislature’s intent is clear from the plain language, this court will give effect to such intention and construe the statute’s language to effectuate rather than nullify its manifest purpose.[15] This court has recognized that “[t]he Nevada Constitution should be read as a whole, so as to give effect to and harmonize each provision.”[16] Thus, when possible, the interpretation of a statute or constitutional provision will be harmonized with other statutes or provisions to avoid unreasonable or absurd results.[17] Conversely, if a constitutional provision’s language is subject to more than one reasonable, although inconsistent, interpretation,[18] the court may look to the provision’s legislative history and the constitutional scheme as a whole to determine what the Nevada Constitution’s framers intended.[19]

Constitutionality of NRS 295.056(3)

The primary issue raised in this writ petition concerns the constitutionality of NRS 295.056(3). A presumption of validity is given to the statute,[20] but that presumption can be rebutted when the challenger clearly establishes the statute’s invalidity.[21]
NRS 295.056(3) states that an initiative proposing to amend the constitution must be submitted for signature verification “not later than the third Tuesday in May of an even-numbered year.’ ’ Conse *882 quently, under this statutory provision initiatives intended for the November 2008 general election ballot were required to be submitted for signature verification no later than May 20, 2008. A plain reading of this statute reveals that it is not ambiguous and sets a clear deadline for submission of initiatives for signature verification.[22]
Nevertheless, We the People argues that this deadline is earlier than what is otherwise allowed by Article 19, Sections 2(4) and 3(2) of the Nevada Constitution, and thus, the presumption of validity has been rebutted. More specifically, We the People contends that the earliest the Legislature may set the submission deadline is 155 days before a general election (90 days under Article 19, Section 2(4) plus 65 days under Section 3(2)). The Secretary of State and several amici curiae counter that the current version of NRS 295.056(3) is constitutional because Sections 2(4) and 3(2) provide the Legislature with the authority to create a flexible time frame to establish a submission deadline relating to initiatives proposing amendments to the constitution. To determine NRS 295.056(3) ’s constitutionality, we must examine the constitutional provisions at issue: Sections 2(4) and 3(2).

Article 19, Section 2(4) ’s language is ambiguous

Under Article 19, Section 2(4), once an initiative has been circulated for signatures it must be filed with the Secretary of State not less than 90 days before the general election and the initiative’s circulation must cease:
After its circulation [an initiative petition] shall be filed with the Secretary of State not less than 90 days before any regular general election .... The circulation of the petition shall cease on the day the petition is filed with the Secretary of State or such other date as may be prescribed for the verification of the number of signatures affixed to the petition, whichever is earliest.
According to We the People, the language “not less than 90 days” sets a fixed deadline that allows an initiative to be filed after it is circulated for signatures up until, and including, 90 days before the general election. Both the Secretary of State and the Legislature argue, however, that Section 2(4)’s language is intended to be flexible so that the Legislature may set the filing deadline anytime earlier than 90 days before a general election.
*883 While Article 19, Section 2(4) sets the filing deadline, Article 19, Section 3(2) expressly empowers the Legislature to establish a signature verification submission deadline, which may not be set more than 65 days earlier than what Article 19 otherwise requires:
The Legislature may authorize the Secretary of State and the other public officers to use generally accepted statistical procedures in conducting a preliminary verification of the number of signatures submitted in connection with ... an initiative petition, and for this purpose to require petitions to be filed no more than 65 days earlier than is otherwise required by this Article.
We the People argues that the 65 days under Section 3(2), together with the 90-day fixed deadline under Section 2(4), delineates the maximum number of days that the submission deadline can be set, which is 155 days before the general election. On the other hand, if the 90-day deadline may be modified by the Legislature, as the Secretary of State and the Legislature contend, then the Legislature may set the filing date earlier than 90 days before the general election and the submission deadline must occur within, but not more than, 65 days from the flexible filing deadline.
We the People’s interpretation is reasonable because Section 3(2)’s language, “no more than 65 days earlier than is otherwise required by this Article,”[23] appears to presume that a date certain has been established in Article 19. Article 19 shows that the corresponding deadline for initiatives proposing constitutional amendments is “not less than 90 days” under Section 2(4). The interpretation advocated by the Secretary of State and the Legislature — that the phrase “not less than 90 days” means that the filing date can occur earlier than 90 days before a general election — is also reasonable.[24] Although the parties’ interpretations of Section 2(4)’s language are reasonable, the application of each interpretation renders inconsistent results. Thus, Article 19, Section 2(4)’s phrase “not less than 90 days” is ambiguous because it is susceptible to more than one reasonable but inconsistent interpretation.
We therefore turn to the legislative history of each constitutional provision and the statutory provision at issue, as well as the con *884 stitutional scheme of Article 19, in an effort to harmonize Sections 2(4) and 3(2) of Article 19, so as to give Article 19, Section 2(4)’s “not less than 90 days” language its proper interpretation and effect.[25]

Legislative history of Section 2(4) and NRS 295.056(3)

We the People argues that the legislative history of Section 2(4) contradicts the Legislature’s argument that “not less than 90 days” is a flexible filing date. Specifically, the legislative history shows that Article 19, Section 2(4) was amended twice to move the filing deadline back to 90 days before the general election. Additionally, the amendments to NRS 295.056(3) demonstrate that the Legislature understood Section 2(4)’s language to create a fixed filing deadline and that the submission deadline could not occur more than 65 days before the 90-day filing deadline.

Article 19, Section 2(4)’sprior amendments

Before 1961, Article 19 required initiatives to be filed with the Secretary of State not less than 30 days before the election.[26] In 1960 and 1961, the Legislature proposed amending Article 19 to extend the deadline to 60 days before an election.[27] This amendment became effective in 1962.[28] Then, in 1969 and 1971, the Legislature again proposed amending Article 19, Section 2(4)’s language, this time to extend the deadline to 90 days, to give the Secretary of State additional time to prepare ballots.[29] This amendment took effect in 1972.[30]
These amendments to Article 19, Section 2(4)’s language indicate that the Legislature understood Section 2(4)’s language to set a firm deadline for circulators of initiatives to file an initiative with the Secretary of State: up until 60 days before the general election, under the 1961 version of Article 19, Section 2(4), or 90 days, under the 1969 version. If the Legislature truly was empowered to enact a filing deadline earlier than that stated in Section 2(4), a *885 constitutional amendment to extend the deadline would have been unnecessary. Accordingly the legislative history of Article 19, Section 2(4) indicates that the Legislature did not intend this constitutional provision to provide a flexible filing date.[31]

NRS 295.056(3)’s legislative history

In addition to Article 19, Section 2(4)’s legislative history, which suggests that Section 2(4)’s 90-day deadline is firm, amendments to NRS 295.056(3) similarly reveal that the Legislature treated the 90-day deadline as fixed. Specifically, in 1985, the Legislature amended NRS 295.056(3) to create a submission deadline “not less than 155 days” before the general election.[32] Generally, this meant that the submission deadline would occur in early June during an election year. Then, in 1993, Senate Bill 552 amended NRS 295.056(3) to require that initiative petitions be submitted “not later than the third Tuesday in June.”[33] In support of S.B. 552, the Secretary of State’s office had requested that the 65 days it originally asked for be “trimmed to 45 days,” which would set a July submission date, rather than June, because it believed that the county clerks had too much time to verify signatures.[34] Under Article 19, Section 3(2), this was a valid amendment because whether the submission deadline fell in July as the Secretary of State had requested, or on the third Tuesday in June as the Legislature enacted, the deadline fell within the 65-day block of time, immediately preceding the 90-day filing deadline, to verify signatures.
NRS 295.056(3)’s legislative history shows that the Legislature has either set the submission deadline at, or within, 65 days from the filing deadline. Thus, the Legislature’s argument that the phrase “not less than 90 days” in Article 19, Section 2(4) is flexible is belied by the legislative history that shows that the Legislature itself did not intend the filing deadline to be flexible. The only flexibility that exists, under Article 19, Section 3(2), is the movement of the signature verification process within a 65-day period of time from the 90-day filing deadline. Thus, the Legislature may not set the submission deadline any earlier than 155 days from a general election.

*886
Article 19 ’s constitutional scheme

The constitutional scheme of Article 19 also suggests that the Legislature did not intend to create a flexible filing date under Section 2(4)’s language.[35] As an initial matter, Article 19 directly provides that its provisions are self-executing, and this court has recognized that one of the basic powers enumerated in Nevada’s Constitution is the authority of the electorate to change this state’s laws through the initiative process.[36] Similarly, Article 19’s general construction is inconsistent with any broad authority permitting the Legislature to enact a filing deadline earlier than 90 days before a general election. Finally, the intent to have the submission deadline immediately precede tibe fixed filing deadline of 90 days is evidenced by the Legislature’s amendment of Article 19 to include Section 3(2), which creates the Secretary of State’s authority to conduct preliminary signature verification and to have 65 days to do so.

Guarantee of the people’s right of direct legislation

The Legislature argues that it is constitutionally permitted to enact any submission deadline because Article 19, Section 5 states in part that “the legislature may provide by law for procedures to facilitate” the initiative process. Yet, Article 19, Section 5 also clearly states that “[t)he provisions of [Article 19] are self-executing.”
This court has consistently held that the initiative powers granted to Nevada’s electorate are broad.[37] And this court has “[made] every effort to sustain and preserve the people’s constitutional right to amend their constitution through the initiative process,”[38] when interpreting and applying laws that seek to facilitate the initiative process’s operation. Thus, although Section 5 generally states that the Legislature may enact laws to facilitate the initiative process, Article 19, Section 2(1) also provides that the people of Nevada have reserved to themselves the power to create laws or amendments and to pass or reject them. We have interpreted these two clauses — the Legislature’s power to regulate the facilitation of *887 the initiative process and the powers reserved to Nevada’s electorate — as “explicitly authorizing] the Legislature to enact laws regulating the initiative process, so long as those laws facilitate the provisions of Article 19.”[39] In other words, the procedural laws enacted by the Legislature may not unreasonably inhibit the powers reserved to the people in Article 19.[40]
Here, Section 3(2)’s language — “no more than 65 days earlier than is otherwise required by this Article” — presumes that a fixed deadline has been established. The intentional reference to Article 19 in Section 3(2) indicates that Article 19, Section 2(4)’s language establishes a fixed filing deadline. Accordingly, one may reasonably infer that Sections 2(4) and 3(2) were intended to be self-executing, rather than left to a statutory enactment, particularly one that inhibits the initiative power by shortening the time to circulate a petition for signatures.[41] Thus, the Legislature’s argument that it is constitutionally permitted to enact any submission deadline because Article 19, Section 5 allows the Legislature to enact procedural laws without restriction is unpersuasive.

Article 19 ’s general makeup demonstrates inflexible filing deadline

The general structure of Article 19, like the legislative history discussed above, contradicts the Legislature’s argument that “not less than 90 days” under Section 2(4) creates a flexible filing deadline because such an interpretation would inevitably impair the people’s right to effectively circulate initiatives for signatures. Indeed, the initial filing date with the Secretary of State, before circulating an initiative, occurs, at the earliest, on September 1 of the year before an election.[42] In other words, circulators of initiatives *888 proposing constitutional amendments may not file an initiative until September 1 in the year before an election. Then, if “not less than 90 days” under Article 19, Section 2(4) is interpreted to give the Legislature broad authority to enact an earlier filing deadline, this interpretation would necessarily require that the 65-day submission deadline, under Section 3(2), also be moved earlier into the year, closer to the September 1 filing date. Such an interpretation would inevitably and unreasonably reduce the period for circulating initiatives.[43]
Thus, when Article 19’s constitutional scheme, including the power reserved to Nevada’s electorate, is examined as a whole, the phrase “not less than 90 days” must serve as a fixed deadline, not a flexible filing date subject to the Legislature’s ability to facilitate the initiative process under Section 5 of Article 19.[44]

Creation of Article 19, Section 3(2)

As it relates to Article 19, Section 3(2), We the People argues that the legislative history of this constitutional provision illustrates that the Legislature has only limited authority to establish the submission deadline. Specifically, Section 3(2) states that a signature verification submission deadline cannot occur more than 65 days earlier than any other deadline set forth in Article 19.
In 1985, the Legislature amended NRS 295.056(3) to create a submission deadline “not less than 155 days” before a general election, which took effect immediately.[45] At the time, the Secretary of State pointed out that a constitutional amendment was necessary and requested, among other things, that the Legislature provide an “additional 65 days for signature verification in addition to the constitutional provisions.”[46] In support of the request, the Secretary of State submitted a timeline denoting the various deadlines required by the constitution.[47] The timeline showed that the filing date for initiatives proposing to amend the constitution is 90 *889 days before the general election. It also depicted the proposed signature verification process as a block of 65 days immediately preceding the 90-day filing deadline.
Following the Secretary of State’s request, the Legislature drafted Article 19, Section 3(2)’s language to permit the Legislature to require that initiatives be submitted for preliminary signature verification “no more than 65 days earlier than is otherwise required by this article.”[48] The constitutional amendment was passed by the Legislature in 1985 and 1987 and approved by the voters in 1988.[49] Thus, when the Legislature set the submission deadline at 155 days before a general election, under the 1985 version of NRS 295.056(3), and then Article 19, Section 3(2) was added to the constitution in 1988, the Legislature intended that the earliest the submission deadline could be set is 155 days before an election (90 days under Article 19, Section 2(4) plus 65 days under Article 19, Section 3(2)).[50]
In light of the legislative history and considering the constitutional scheme as a whole, we conclude that Article 19, Section 2(4) establishes a fixed filing deadline 90 days before the general election. The filing deadline in Section 2(4) was twice moved earlier into the year to give the Secretary of State additional time to prepare ballots. And when Nevada’s Constitution was amended to include Section 3(2), the Legislature specifically stated that an additional 65 days, but not more than that, may be added to the filing deadline to complete signature verification. This constitutional amendment was effectuated to coincide with NRS 295.056(3)’s 1985 version, which set the submission deadline at 155 days before the general election. Accordingly, the Legislature did not intend the phrase “not less than 90 days” in Article 19, Section 2(4) to be flexible, and the earliest that the Legislature may set the submission deadline is 155 days before the general election. Thus, the current version of NRS 295.056(3), which sets the submission deadline 167 days before a general election, is unconstitutional.

Former NRS 295.056(3) ’s revival

This court has previously recognized that when a statute is declared unconstitutional, it has no effect and the prior governing statute is revived.[51] An unconstitutional act is not law, and thus, can *890 neither “confer a right or immunity nor operate to supersede any existing valid law.”[52] Because we have declared the current version of NRS 295.056(3) unconstitutional, the former version of that provision remains in effect. The former version of NRS 295.056(3) required that initiatives seeking to amend the constitution be submitted for signature verification “not later than the third Tuesday in June.”[53] This year, the third Tuesday in June was June 17, 2008. Accordingly, We the People had until June 17 to submit signatures to the county clerks for verification. Recognizing that, We the People gathered additional signatures and submitted them to the Clark and Washoe County clerks on June 17, 2008, requesting that these signatures, along with the signatures that it previously submitted be accepted for signature verification as outlined in NRS Chapter 293.
Nevertheless, the Secretary of State and Nevadans for Nevada insist that even if NRS 295.056(3) is unconstitutional, this court has no authority to grant the requested relief — requiring the Secretary of State to accept all signatures submitted for verification by June 17 — because Article 19, Section 2(4) prohibits an initiative’s circulation after it is submitted for signature verification and NRS 295.056(5) requires that initiative documents be submitted to the various county clerks on the same day. The Secretary of State’s and Nevadans for Nevada’s position lacks merit, however.
Article 19, Section 2(4) states that a petition’s circulation “shall cease on the day [it] is filed with the Secretary of State or such other date as may be prescribed for [signature verification], whichever is earliest.”[54] Thus, since June 17 was the validly prescribed submission date for signature verification, We the People had until that date to circulate its petition.
With respect to the Secretary of State’s and Nevadans for Nevada’s argument that relief is precluded because the signatures must be submitted for verification on the same date to each of the county clerks under NRS 295.056(5), a statutory provision will not be enforced when to do so would infringe upon rights guaranteed by our state constitution.[55] Here, We the People was exercising a constitutional right that we have recognized as “one of the basic powers enumerated in this state’s constitution,” deserving of our *891 every effort to preserve.[56] Further, We the People had a constitutional right, under Article 19, Sections 2(4) and 3(2) of Nevada’s Constitution, to circulate its initiative for signatures until June 17 because the May 20 statutory submission deadline was unconstitutional. We the People’s reasonable attempt to comply with the earlier submission deadline, later determined invalid, cannot now be used to defeat its constitutional right to petition, especially when the invalidity of the submission deadline was unclear.[57] Accordingly, under these circumstances, We the People properly circulated its initiative and submitted additional signatures by the constitutionally valid submission deadline and thereby permissibly proceeded with the NRS Chapter 293 verification process for all signatures submitted by the valid June 17 deadline, which we declared should be properly accepted by the Secretary of State for verification.

CONCLUSION

The current version of NRS 295.056(3) is unconstitutional in light of Article 19, Sections 2(4) and 3(2). Article 19, Section 3(2) provides that, for purposes of conducting preliminary signature verification, the Legislature may not require that initiatives be submitted more than 65 days earlier than what is otherwise required under Article 19. As regards what Article 19 “otherwise requires,” Section 2(4) states that circulators of initiatives have until 90 days before the general election to file their initiative with the Secretary of State. Taken together, the submission deadline for signature verification may not be set earlier than 155 days from the general election.
Further, Article 19, Section 5 of the Nevada Constitution provides that Article 19’s provisions are self-executing, and although the Legislature may enact procedures to facilitate the initiative process, those procedures may not directly inhibit or restrict the powers reserved to the people under Article 19. The current version of NRS 295.056(3) directly contravenes Article 19.
*892 Because NRS 295.056(3) impermissibly established a submission deadline earlier than what is otherwise permitted, i.e., May 20, that provision is unconstitutional, and the June 17, 2008, deadline under that provision’s former version remains in effect, and thus, we directed the Secretary of State to accept the signatures submitted by We the People to the county clerks by June 17 for signature verification pursuant to NRS Chapter 293. Accordingly, we granted the petition for a writ of mandamus.[58]

In its reply, contrary to its writ petition, We the People states that it did believe that it had enough signatures when it submitted the initiative for signature verification on May 20, 2008, to meet the minimum number required to be certified, but “due to a clerical error caused by the extreme time pressure,” the initiative ultimately lacked enough signatures for certification.

Nevadans for Nevada (an organization formed by the Nevada AFL-CIO), the Nevada State Education Association, and the Nevada State Legislature have each filed an amicus brief. The following groups have jointly filed an amicus brief: Nevada Eagle Forum, Nevadans for Sound Government, Nevada Committee for Full Statehood, Nevada Concerned Citizens, Citizens in Action, *879 Foundation to Protect and Defend the Nevada Constitution, Independent American Party, Nevada Families Education Foundation, Nevada Republican Liberty Caucus, Title of Liberty Foundation, People Organized for the Next Generation, and Nevada Freedom Coalition.

NRS 34.160; Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981).

NRS 34.320.

See NRS 34.170; NRS 34.330.

See Smith v. District Court, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).

Business Computer Rentals v. State Treas., 114 Nev. 63, 67, 953 P.2d 13, 15 (1998).

Jeep Corp. v. District Court, 98 Nev. 440, 443, 652 P.2d 1183, 1185 (1982).

Pan v. Dist. Ct., 120 Nev. 222, 228, 88 P.3d 840, 844 (2004); NRAP 21(a).

The Secretary of State and the Nevadans for Nevada contend that the doctrines of laches and equitable estoppel preclude granting writ relief in this petition. See Carson City v. Price, 113 Nev. 409, 412, 934 P.2d 1042, 1043 (1997) (recognizing that the laches doctrine is an equitable doctrine that is invoked to deny relief to a party who worked to the disadvantage of the other and caused a change in circumstances); Nevada State Bank v. Jamison Partnership, 106 Nev. 792, 799, 801 P.2d 1377, 1382 (1990) (“Equitable estoppel [prevents] a party from asserting legal rights that, in equity and good conscience, they should not be allowed to assert because of their conduct.”). Having considered these arguments, we conclude that they lack merit and will not be addressed further.

International Game Tech. v. Dist. Ct., 124 Nev. 193, 198, 179 P.3d 556, 559 (2008).

Harvey v. Dist. Ct., 117 Nev. 754, 763, 32 P.3d 1263, 1269 (2001).

California Commercial v. Amedeo Vegas I, 119 Nev. 143, 145 , 67 P.3d 328, 330 (2003).

Sheriff v. Luqman, 101 Nev. 149, 155, 697 P.2d 107, 111 (1985).

Nevadans for Nevada v. Beers, 122 Nev. 930, 944, 142 P.3d 339, 348 (2006).

Nevada Power Co. v. Haggerty, 115 Nev. 353, 364, 989 P.2d 870, 877 (1999).

Gallagher v. City of Las Vegas, 114 Nev. 595, 599, 959 P.2d 519, 521 (1998).

McKay v. Bd. of Supervisors, 102 Nev. 644, 650-51, 730 P.2d 438 , 443 (1986); see also Beazer Homes Nevada, Inc. v. Dist. Ct., 120 Nev. 575, 582, 97 P.3d 1132, 1137 (2004).

Beers, 122 Nev. at 939, 142 P.3d at 345.

Id.

California Commercial v. Amedeo Vegas I, 119 Nev. 143, 145-46, 67 P.3d 328, 330 (2003) (providing that a statute’s language is applied in accordance with its plain meaning unless it is ambiguous).

Emphasis added.

Cf. Carter v. Johnston, 145 F.2d 882, 883 (9th Cir. 1944) (providing that the phrase “imprisonment for not less than 10 years” means that the offender is subjected to a “sentence of ten years at least and above that to any term of years fixed by the court”); see also Turley v. Bolin, 554 P.2d 1288 (Ariz. Ct. App. 1976) (recognizing that the phrase “not less than,” when considered alone, indicates a flexible filing standard that is subject to change to meet the requirements of growth).

 McKay v. Bd. of Supervisors, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986) (recognizing that if a constitutional provision’s language is subject to more than one reasonable but inconsistent interpretation, a court may look at the provision’s history to determine its intent); see also Beazer Homes Nevada, Inc. v. Dist. Ct., 120 Nev. 575, 582, 97 P.3d 1132, 1137 (2004).

 See 1960 Nev Stat., at 513; 1961 Nev. Stat., at 814.

 1960 Nev. Stat., at 516; 1961 Nev. Stat., at 816.

 Nev. Const. art. 19, § 2(4) (amended 1962).

 See Hearing on S.J.R. 7 Before the Senate Judiciary Comm., 55th Leg. (Nev., February 12, 1969); 1971 Nev. Stat., at 2231.

 Nev. Const. art. 19, § 2(4) (amended 1972).

 See McKay v. Bd. of Supervisors, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986) (recognizing that if a provision’s language is ambiguous, the provision’s history may reveal the framers’ intent).

 See 1985 Nev. Stat., ch. 390, § 86, at 1114.

 1993 Nev. Stat., ch. 638, § 48, at 2670.

 See Hearing on S.B. 552 Before the Senate Comm. on Government Affairs, 67th Leg. (Nev., June 21, 1993) (quoting Dale Erquiaga, Chief Deputy, Nevada Secretary of State).

Nevadans for Nevada v. Beers, 122 Nev. 930, 944, 142 P.3d 339, 348 (2006) (providing that Nevada’s Constitution “should be read as a whole, so as to give effect to and harmonize each provision”).

Nevadans for Prop. Rights v. Sec’y of State, 122 Nev. 894, 912, 141 P.3d 1235, 1247 (2006) (citing University Sys. v. Nevadans for Sound Gov't, 120 Nev. 712, 734, 100 P.3d 179, 195 (2004)).

Forman v. Eagle Thrifty Drugs & Markets, 89 Nev. 533, 537, 516 P.2d 1234, 1236 (1973), overruled on other grounds by Garvin v. Dist. Ct., 118 Nev. 749, 59 P.3d 1180 (2002).

Nevadans for Prop. Rights, 122 Nev. at 912, 141 P.3d at 1247.

 Id. at 902, 141 P.3d at 1240; see also Turley v. Bolin, 554 P.2d 1288, 1291 (Ariz. Ct. App. 1976) (recognizing that the people’s power to propose and enact or reject such laws evidences the deliberate and intentional exercise of the people’s “ ‘supreme sovereign power ... [to directly restrict] the legislative authority, . . . [which] was in all respects intended to be subordinate to direct action by the people’ ” (quoting Whitman v. Moore, 125 P.2d 445, 451 (Ariz. 1942), overruled in part on other grounds by Renck v. Superior Court of Maricopa County, 187 P.2d 656 (Ariz. 1947))).

 Nevadans for Prop. Rights, 122 Nev. at 902, 141 P.3d at 1240; Turley , 554 P.2d at 1290-93 (concluding that a statute was unconstitutional on the basis that the initiative provisions in the Arizona Constitution are self-executing and therefore bar legislation that unreasonably hinders or restricts the constitutional provision rather than reasonably supplementing the constitutional purpose).

 See Nev. Const, art. 19, § 5 (providing, in part, that the provisions of Article 19 are self-executing); see also Yenter v. Baker, 248 P.2d 311, 315 (Colo. 1952) (recognizing that because the people of Colorado reserved the right to enact laws independent of the legislature, it was not the people’s intent to grant the legislature the authority to establish deadlines earlier than what was already constitutionally mandated).

Nev. Const, art. 19, § 2(4).

See McGee v. Secretary of State, 896 A.2d 933, 935-37 (Me. 2006) (concluding that in light of the state’s constitutional scheme — allowing circulators reasonable flexibility in determining when to file their petitions — the statutory deadline for filing petitions imposed a substantial restriction on a circulator’s flexibility in filing, in direct conflict with the constitutional scheme).

See Turley, 554 P.2d at 1293 (providing that a “constitutional filing limitation must be considered in the context of the important legislative rights reserved” to the people via the initiative process).

NRS 295.056(3) (amended 1985); see also 1985 Nev. Stat., ch. 390, § 86, at 1114.

See Hearing on S J.R. 16 Before the Senate Comm, on Government Affairs, 63d Leg. (Nev., March 27, 1985) (testimony of William Swackhamer, Nevada Secretary of State).

See Hearing on S.J.R. 16 Before the Assembly Comm, on Elections, 63d Leg. (Nev., May 16, 1985), Exhibit B.

 1985 Nev. Stat., at 2366; 1987 Nev. Stat., at 2350.

 Nev. Const, art. 19, § 3(2) (amended 1988).

 See Halverson v. Secretary of State, 124 Nev. 484, 489, 186 P.3d 893, 897 (2008) (recognizing that the Legislature’s contemporaneous construction is “ ‘likely reflective of the mindset of the framers’ ” (quoting Director, Office of State Lands v. Merbanco, 70 P.3d 241, 256 (Wyo. 2003))).

 Finger v. State, 117 Nev. 548, 576, 27 P.3d 66, 84 (2001).

 Chicago, Ind. & L. Ry. Co. v. Hackett, 228 U.S. 559, 566 (1913).

 See 1993 Nev. Stat., ch. 638, § 48, at 2670.

 Emphasis added.

 See, e.g., Brock v. Superior Court, 86 P.2d 805, 807 (Cal. 1939) (providing that in the injunction context, a facially valid statute should not be enforced if it is unconstitutional when applied or will violate constitutionally *891 guaranteed rights (relying on Yick Wo v. Hopkins, 118 U.S. 356 (1886))); Dunigan Enterprises, Inc. v. Dist. Atty. for N. D., 415 N.E.2d 251, 253 (Mass. App. Ct. 1981) (providing that a court may grant relief to “protect constitutional rights against actual and threatened violation”); Rathke v. MacFarlane, 648 P.2d 648, 652 (Colo. 1982) (providing that enforcement of a statute or law may be enjoined when property rights or fundamental constitutional rights are threatened or are being destroyed); see also Secaucus v. Hudson Cty. Bd. of Taxation, 628 A.2d 288, 293 (N.J. 1993) (providing that when a statute and state constitution “come into conflict, the statute must give way”).

 Nevadans for Prop. Rights v. Sec’y of State, 122 Nev. 894, 912, 141 P.3d 1235, 1247 (2006) (internal quotations omitted).

 See Nevadans for Nevada v. Beers, 122 Nev. 930, 939, 142 P.3d 339, 345 (2006) (recognizing that a statute is presumed valid).

On My 16, 2008, this court granted the original petition and issued a writ of mandamus directing the Secretary of State to accept the signatures submitted by We the People for signature verification pursuant to NRS Chapter 293. In our July 16 order, we also stated that because the matter warranted our expedited consideration, our opinion would be forthcoming.