CLARK COUNTY, NEVADA; BOARD OF COMMISSIONERS OF CLARK COUNTY, NEVADA; SUSAN BRAGER, CLARK COUNTY, NEVADA COMMISSIONER; STEVE SISOLAK, CLARK COUNTY, NEVADA COMMISSIONER; TOM COLLINS, CLARK COUNTY, NEVADA COMMISSIONER; LARRY BROWN, CLARK COUNTY, NEVADA COMMISSIONER; LAWRENCE WEEKLY, CLARK COUNTY, NEVADA COMMISSIONER; CHRIS GIUNCHIGLIANI, CLARK COUNTY, NEVADA COMMISSIONER; MARY BETH SCOW, CLARK COUNTY, NEVADA COMMISSIONER; AND DON BURNETTE, CLARK COUNTY, NEVADA MANAGER, APPELLANTS, *v*. SOUTHERN NEVADA HEALTH DISTRICT, RESPONDENT.

No. 59213

December 6, 2012                                289 P.3d 212

---

[Rehearing denied March 12, 2013]

*Kolesar & Leatham* and *Matthew J. Forstadt, Alan J. Lefebvre*, and *William D. Schuller*, Las Vegas, for Appellants.

*Marquis Aurbach Coffing* and *Terry A. Coffing* and *Micah S. Echols*, Las Vegas, for Respondent.

## OPINION

By the Court, DOUGLAS, J.:

In this appeal we address, for the first time, the level of discretion that a county has to determine how much to fund a regional health district under NRS 439.365, which sets forth the budgeting and funding process for health districts in counties with populations over 700,000. Under this statute, we address whether counties have the discretion to fund a health district in an amount less than that requested by the health district, or whether the county must simply approve the budget submitted by the health district up to the statutory maximum set forth in NRS 439.365(2). Because we conclude that NRS 439.365 is ambiguous, we look to the statute's legislative history to resolve this issue, and as the legislative history overwhelmingly demonstrates that NRS 439.365 was designed to provide health districts with a dedicated funding source that would not be subject to the unabated discretion of the county, we conclude that, under this statute, a county must fund the health district at the amount requested, so long as that amount does not exceed NRS 439.365(2)'s statutory cap.

### BACKGROUND

In June 2011, respondent Southern Nevada Health District (SNHD) filed in district court a petition for writs of mandamus and prohibition regarding its budget dispute with appellants Clark County, Nevada; the Board of Commissioners of Clark County, Nevada; County Commissioners Susan Brager, Steve Sisolak, Tom Collins, Larry Brown, Lawrence Weekly, Chris Giunchigliani, and Mary Beth Scow; and Don Burnette, Clark County, Nevada, Manager (hereinafter Clark County). SNHD's writ petition alleged that, in 2005, the Nevada Legislature enacted legislation,

specifically NRS 439.365, that mandated direct funding of SNHD out of Clark County's budget and that Clark County was improperly attempting to fund SNHD below the statutorily mandated budget level. More specifically, SNHD argued that, under NRS 439.365(2), it was entitled to the statutory cap of 3.5 cents on every $100 of assessed valuation of all taxable property, but that Clark County was attempting to improperly reduce its budget to a significantly lesser amount. Therefore, SNHD petitioned the district court to compel Clark County to fully fund SNHD in the amount that it had requested and to prohibit Clark County from interfering with its funding in the future.

Clark County filed an opposition to the writ. Broadly summarized, Clark County primarily argued that SNHD was misreading NRS Chapter 439 in its belief that it was statutorily entitled to a specific level of funding and that the relevant statutes are best read as providing Clark County with the discretion to set SNHD's budget. In addition, Clark County filed a "responsive pleading" to the writ petition, which reads as an answer to a complaint. This document also included a counterclaim seeking various types of relief connected to the budget dispute. As part of its counterclaim, Clark County asserted that NRS Chapter 439 gave it an instrumental and authoritative role in the budget funding process for SNHD, and that SNHD was seeking money to which it was not legally entitled. Therefore, Clark County's counterclaim sought dismissal of SNHD's petition with costs to be assessed, an accounting, compensatory damages, interest, attorney fees, and any other relief provided under law and equity.

The district court held a hearing on SNHD's writ petition during which, after considering the parties' arguments, it concluded that it would rule in SNHD's favor on the petition. Thereafter, the district court entered a written order granting the writs of mandamus and prohibition sought by SNHD. More specifically, the district court concluded that the controlling statute, NRS 439.365, was ambiguous as to whether Clark County could exercise control over the amount of funding SNHD receives in its annual budget. The district court then concluded that it would resort to legislative history to resolve this ambiguity, and that based on this review, the Legislature appeared to have intended the direct funding source to which SNHD asserted it was entitled. Therefore, the district court issued a writ of mandamus ordering Clark County to fully fund SNHD at the requested level for fiscal year 2012, in monthly installments, and a writ of prohibition restraining Clark County from any future noncompliance with directly funding SNHD at the full amount required by NRS 439.365, so long as that amount does not exceed the 3.5-cent calculation. The district court further held that this prohibition was to apply to all future SNHD fiscal-year budgets. Finally, the district court noted that since it was

granting SNHD's writ petition, the counterclaims raised by Clark County were dismissed with prejudice. This appeal by Clark County followed.

## DISCUSSION

We begin our analysis of the issues presented in this appeal by examining NRS 439.365 under this court's rules of statutory construction and evaluating the parties' competing interpretations of that statute. Concluding that SNHD correctly argues that this statute requires counties to fund health districts at the amount requested, up to the statutory cap set forth in NRS 439.365(2), we then turn to whether, by seeking writs of mandamus and prohibition, SNHD utilized the appropriate vehicles to compel Clark County to comply with the requirements of NRS 439.365.

### Health districts

As part of a series of legislation enacted in 2005, health districts are mandated for counties—such as Clark County—with populations of 700,000 or more.[1] NRS 439.361. In these counties, any preexisting county, city, or town boards of health were abolished, NRS 439.362(7), with their powers, duties, and authority transferred to the newly created health districts, which have "jurisdiction over all public health matters in the health district," NRS 439.366(2), and which may adopt regulations that have been approved by the State Board of Health. NRS 439.366(3). And in counties where health districts are required, the board of county commissioners is required to create a health district fund in the county treasury, NRS 439.363(1), which "may only be used to provide funding for the health district."[2] NRS 439.363(2).

The funding process for a health district's annual budget is set forth by statute in NRS 439.365, which provides in its entirety:

> 1. The district board of health shall prepare an annual operating budget for the health district. The district board of health shall submit the budget to the board of county commissioners before April 1 for funding for the following fiscal year. The budget must be adopted by the board of county commissioners as part of the annual county budget.

---

[1] A separate set of statutes apply to the creation of health districts in counties with populations less than 700,000. See NRS 439.369-.410. Health districts are optional in these smaller counties. See NRS 439.370.

[2] Health districts may also receive and disburse federal money and submit applications to and enter into agreements with federal agencies. NRS 439.367(1). Additional funding can come from private, state, or local sources. NRS 439.367(2).

2. The board of county commissioners shall annually allocate for the support of the health district an amount that does not exceed an amount calculated by multiplying the assessed valuation of all taxable property in the county by the rate of 3.5 cents on each $100 of assessed valuation. The amount allocated pursuant to this subsection must be transferred from the county general fund to the health district fund created by the board of county commissioners pursuant to NRS 439.363.

At issue in this appeal is whether NRS 439.365 provides counties with the authority to modify a health district's budget from the figure requested by the health district pursuant to NRS 439.365(1) and to allocate this modified amount, rather than the amount requested, for the support of the health district.

### Rules of statutory construction

This court begins its statutory analysis with the plain meaning rule. *We the People Nevada v. Secretary of State*, 124 Nev. 874, 881, 192 P.3d 1166, 1170-71 (2008). If the Legislature's intention is apparent from the face of the statute, there is no room for construction, and this court will give the statute its plain meaning. *Madera v. SIIS*, 114 Nev. 253, 257, 956 P.2d 117, 120 (1998). Statutes should be read as a whole, so as not to render superfluous words or phrases or make provisions nugatory. *Southern Nev. Homebuilders v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005). If the statute is ambiguous, meaning that it is capable of two or more reasonable interpretations, *In re Candelaria*, 126 Nev. 408, 411, 245 P.3d 518, 520 (2010), this court will "look to the provision's legislative history and the . . . scheme as a whole to determine what the . . . framers intended," *We the People*, 124 Nev. at 881, 192 P.3d at 1171, and we will examine " 'the context and the spirit of the law or the causes which induced the legislature to enact it.' " *Leven v. Frey*, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007) (quoting *McKay v. Bd. of Supervisors*, 102 Nev. 644, 650-51, 730 P.2d 438, 443 (1986)); *accord State, Bus. & Indus. v. Granite Constr.*, 118 Nev. 83, 87, 40 P.3d 423, 426 (2002).

### The parties' plain language arguments

The district court concluded, without explanation, that the statute was ambiguous and, based on the legislative history of NRS 439.365, the statute required Clark County to approve SNHD's budget at the amount requested up to the statutory maximum. Both parties contend that the statute is not ambiguous, and they advance competing plain meaning arguments.

Clark County maintains that the plain language of this statute supports its view that NRS 439.365 gives it the discretion to determine the amount of funding SNHD will receive. To support this contention, Clark County focuses on the use of two phrases in NRS 439.365: "an amount that does not exceed" and "annual operating budget." First, Clark County argues that NRS 439.365(2), which requires the county to "annually allocate for the support of the health district an amount that does not exceed" the statutory cap set forth in that subsection, establishes a ceiling on the amount that can be allocated to SNHD, however, that does not mean that SNHD automatically receives the statutory maximum or any other amount that it requests. Instead, Clark County asserts that that language gives it the discretion to determine the amount that will be allocated to SNHD, up to the maximum amount allowed by the statute. Second, Clark County highlights the statutory phrase "annual operating budget," used in NRS 439.365(1)'s first sentence, and asserts that this terminology should be distinguished from a "capital budget," thus giving Clark County the authority to reject budget requests for capital projects, such as purchasing a new office building, as such items go beyond the plain statutory mandate of an "operating budget."[3]

SNHD focuses its plain language argument on the final sentence of NRS 439.365(1) and the first sentence of NRS 439.365(2). With regard to the last sentence of NRS 439.365(1), which provides that "[t]he budget [submitted by the health district] must be adopted by the board of county commissioners as part of the annual county budget," SNHD points to the use of the term "must" in this sentence and argues that this mandatory language "removes Clark County's discretion to approve or disapprove SNHD's budget." To further support this argument, SNHD emphasizes the phrase "shall annually allocate for the support of the health district," in the first sentence of subsection 2 of this statute, contending that this language makes the allocation of funds to SNHD mandatory. Based on the language in these two sentences, SNHD maintains that

[3]With regard to Clark County's argument that use of the term "operating budget" in NRS 439.365(1) demonstrates that it has the authority to reject capital requests in SNHD's budget, because "operating budget" is not defined by that statute, we conclude that this argument highlights an additional ambiguity in NRS 439.365. We need not define this phrase or otherwise address this argument, however, because this argument is not properly before the court. Notably, there is nothing in the record to support a conclusion that SNHD's budget specifically sought funding for alleged capital items nor is there anything demonstrating that Clark County struck any requests on that basis. Instead, the record reflects that Clark County simply reduced SNHD's budget to an amount it deemed appropriate, without explaining the basis for that reduction. Absent any actual efforts to eliminate capital requests from SNHD's budget, no actual controversy exists with regard to the operating versus capital budget distinction drawn by Clark County.

NRS 439.365 requires Clark County to approve its budget without making any modifications to the amount requested, so long as the budget does not exceed the maximum amount dictated by NRS 439.365(2).

The inherent weakness in both of the parties' arguments is that they focus exclusively on the specific words and phrases in NRS 439.365 that they contend support their interpretations of the statute. It is well settled that, in interpreting a statute, this court must examine the statute as a whole. *See Southern Nev. Homebuilders*, 121 Nev. at 449, 117 P.3d at 173. But when NRS 439.365 is read in its entirety, the parties' respective arguments highlight a discrepancy in the statute between the final sentence of subsection 1, where the mandatory language implies that a county has no control over a health district's budget, and the first sentence of subsection 2, which appears to provide the county with the authority to fix the health district's budget, up to the statutory maximum. Thus, when the statute is read as a whole, both the interpretation offered by Clark County—that NRS 439.365 gives it discretionary authority over SNHD's budget—and that offered by SNHD—that the county has no such authority and must approve the budget as submitted, so long as it does not exceed the statutory maximum—can be deemed reasonable. As a result, like the district court, we conclude that NRS 439.365 is ambiguous, *see In re Candelaria*, 126 Nev. at 411, 245 P.3d at 520 (providing that statutory language is ambiguous when it is capable of more than one reasonable interpretation), and thus, we turn to the legislative history to determine the statute's proper construction.[4] *Leven*, 123 Nev. at 404, 168 P.3d at 716.

---

[4]In asserting that the district court's decision to grant extraordinary writ relief should be reversed and remanded, our dissenting colleague focuses her interpretation of NRS 439.365 on the application of the Local Government Budget and Finance Act, NRS 354.470-.626, to the budgeting dispute issue raised in this appeal. This argument is not properly before us, as neither party advanced this argument in the district court or on appeal; thus, we do not consider it now. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating that, when a party fails to make arguments or provide citations to relevant authority addressing an issue, this court need not consider that issue in resolving the appeal).

The dissent further maintains that our interpretation of this statute effectively reads the words ''does not exceed'' out of subsection 2 of this statute, before going on to reject our conclusion that NRS 439.365 is ambiguous. To reach this result, our dissenting colleague fails to account for the mandatory language of NRS 439.365(1), which provides that the budget submitted by the health district ''must be adopted'' by the county. It is the discrepancy between this mandatory language and the language of subsection 2, appearing to give the county discretion to fix the health district's budget up to the statutory maximum, that creates the ambiguity that we address here today by applying this court's well-established principles of statutory construction that, when a statute is ambiguous, this court looks to the statute's legislative history to determine the framers' intent and examines the context and spirit of the law or the rea-

*Legislative history*

In the underlying proceeding, once the district court determined that NRS 439.365 was ambiguous, it looked to the statute's legislative history and concluded that the legislative history demonstrated that "the Legislature intended to provide SNHD with a direct source of funding," and thus, the district court adopted SNHD's interpretation of this statute.[5] Indeed, NRS 439.365's legislative history overwhelmingly demonstrates that the purpose behind the statute was to provide health districts with a direct funding source and to limit county authority over their budgets.

During the Legislature's consideration of Assembly Bill 380, the bill that ultimately resulted in, among other statutes, NRS 439.365, one proponent of the bill, Dan Musgrove, the Director of Intergovernmental Relations for the Office of the County Manager, Clark County, Nevada, testified:

> Our amendment does two things, and this was on our discussions with [Assemblyman] Parks as to what he envisioned and what we thought would be the best thing for [SNHD] going forward, in terms of *an established funding source*. The first thing is to go ahead and allow for them to have a tax levy not to exceed $3.25 per $100 of taxable property. Now, that is simply shifting of an existing countywide rate so that there isn't any increase at all, in terms of the countywide rate. *It's simply a redistribution of existing funds that would go directly to [SNHD]* . . . .

Hearing on A.B. 380 Before the Assembly Comm. on Health and Human Services, 73d Leg. (Nev., April 6, 2005) (statement of Dan Musgrove, Director of Intergovernmental Relations, Office of the County Manager, Clark County) (emphases added). Mr. Musgrove further explained that the bill provided "a designated fund-

---

soning that induced the Legislature to enact that statute. *We the People Nevada v. Secretary of State*, 124 Nev. 874, 881, 192 P.3d 1166, 1170-71 (2008); *Leven v. Frey*, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007).

[5]On appeal, Clark County fails to address NRS 439.365's legislative history and instead argues that, if this court concludes that the statute is ambiguous, it should ignore the legislative history and adopt its position that the statute provides counties with discretion to determine the amount of a health district's budget. Relying on *J.E. Dunn Northwest v. Corus Construction Venture*, 127 Nev. 72, 249 P.3d 501 (2011), for the proposition that this court avoids absurd results when resolving statutory ambiguities, Clark County maintains that, in a time of severe budget shortfalls, it would be absurd to conclude that it does not have the authority to set SNHD's budget at an amount of its choosing, up to the statutory maximum. This argument lacks merit. Indeed, if we were to adopt this argument, then any direct funding statute, such as NRS 387.195, which directs boards of county commissioners to "levy a tax of 75 cents on each $100 of assessed valuation of taxable property within the county for the support of the public schools within the county school district," would become of questionable validity.

ing stream to allow [SNHD] some long-term planning," because SNHD "really had no way of knowing whether the County Commission was going to provide them the funding from year to year, and this would give them a designated funding source." *Id.* At the bill's next legislative hearing before the Assembly Committee on Health and Human Services, the proposed bill was summarized by the Legislative Counsel Bureau as containing "a guaranteed revenue source for the funding of a health district through a property tax levy." Hearing on A.B. 380 Before the Assembly Comm. on Health and Human Services, 73d Leg. (Nev., April 13, 2005) (statement of Barbara Dimmitt, Committee Policy Analyst, Legislative Counsel Bureau). Legislative Committee Chairwoman Sheila Leslie, along similar lines, commented that:

> As I understand it, the advantage to this is for [SNHD], and it provides them a dedicated funding stream. Before this proposed bill, they have to come in and ask the county commission every year, and depending on how the commissioners feel about the department, their budget might go up or down.

*Id.* (statement of Shelia Leslie, Chairwoman, Committee on Health and Human Services). This testimony demonstrates that, in enacting this bill, the Legislature intended to create a system that provided health districts with a revenue stream free from county interference. In light of this legislative history, we conclude, as the district court did, that NRS 439.365 requires a county to adopt the budget submitted by a health district, without modification, so long as the amount requested does not exceed the 3.5 cents per $100 cap set forth in NRS 439.365(2).

*Propriety of writ relief*

After adopting its interpretation of NRS 439.365, the district court concluded that extraordinary relief was warranted, and as such, it granted SNHD's petition for a writ of mandamus and a writ of prohibition. The district court's issuance of a writ of prohibition is problematic, however; accordingly, we now turn to the propriety of the district court's grant of SNHD's requests for writ relief.

A writ of mandamus is available "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station," NRS 34.160, or "to control an arbitrary or capricious exercise of discretion." *Berrum v. Otto*, 127 Nev. 372, 377, 255 P.3d 1269, 1272 (2011) (internal quotations omitted). A writ of prohibition may issue to arrest the proceedings of

any tribunal, corporation, board, or person exercising judicial functions, when such proceedings are in excess of the jurisdiction of such tribunal, corporation, board, or person. NRS 34.320. Both mandamus and prohibition are available only when the petitioner has no plain, speedy, or adequate remedy at law. NRS 34.170 (mandamus); NRS 34.330 (prohibition). This court reviews a district court's grant or denial of a writ petition under an abuse of discretion standard. *DR Partners v. Bd. of County Comm'rs*, 116 Nev. 616, 621, 6 P.3d 465, 468 (2000). Related statutory and legal issues, however, are reviewed de novo. *Berrum*, 127 Nev. at 377, 255 P.3d at 1272.

In the underlying case, the district court granted SNHD's request for mandamus relief to direct Clark County "to fully fund SNHD for fiscal year 2012" at the amount requested by SNHD. The district court further granted SNHD a writ of prohibition to restrain Clark County "from further noncompliance with SNHD's direct funding mandated by the Legislature" under NRS 439.365. This writ of prohibition applies "to [all] future budgets proposed by SNHD that 'must be adopted' by Clark County so long as [they] do not exceed the 3.5 cent calculation set forth in NRS 439.365(2)." On appeal, the parties make no arguments regarding whether mandamus and/or prohibition were the appropriate remedies for resolving their budget dispute.[6]

Because NRS Chapter 439 does not provide any statutory remedy for a health district to compel a county to comply with the funding requirements of NRS 439.365 and given that SNHD is seeking funds that, under our interpretation of that statute, Clark County improperly withheld, we conclude that a writ of mandamus represents the proper vehicle for compelling Clark County to comply with its duty to fully fund SNHD in compliance with NRS 439.365. *Berrum*, 127 Nev. 372, 255 P.3d 1269 (affirming a district court's grant of mandamus relief to taxpayers seeking refunds from a county treasurer when there was no other adequate statutory or legal remedy and the treasurer had a duty to refund the amounts requested). Thus, we affirm the district court's grant of mandamus relief.

---

[6]Clark County does reassert its district court position that, because SNHD is a political subdivision of Clark County, it cannot sue Clark County "to force it to do anything . . . at variance with NRS 439.365(2)." It further contends that political subdivisions of a state cannot challenge the validity of a state statute under the Fourteenth Amendment, citing *City of South Lake Tahoe v. California Tahoe*, 625 F.2d 231, 233 (9th Cir. 1980). SNHD, however, seeks to compel Clark County's compliance with NRS 439.365, not to force it to act at variance with that statute. Moreover, SNHD is not challenging the validity of NRS 439.365, under the Fourteenth Amendment or otherwise. Thus, we conclude that these assertions are not germane to the resolution of the issues before us.

With regard to the writ of prohibition granted by the district court, however, such relief is available only to arrest the proceedings of an individual or entity exercising judicial functions when such proceedings are in excess of the individual or entity's jurisdiction. NRS 34.320. Here, Clark County's evaluation and approval of SNHD's budget involves legislative rather than judicial functions. As a result, the district court abused its discretion in granting a writ of prohibition to bar Clark County from further noncompliance with the direct funding requirement of NRS 439.365. As was the case with directing Clark County to fully comply with the direct funding requirements of NRS 439.365, the proper vehicle for compelling Clark County's continued compliance with this requirement was through a writ of mandamus. We therefore reverse in part the district court's order for the limited purpose of revising its order to reflect that the relief it granted through a writ of prohibition is instead achieved through the issuance of a writ of mandamus.

## CONCLUSION

NRS 439.365 is ambiguous. Based on the statute's legislative history, it must be interpreted as requiring a county to adopt a health district's budget as submitted and without modification, so long as the requested amount does not exceed the statutory maximum set forth in NRS 439.365(2). With regard to the remedy utilized by the district court, we find no abuse of discretion in its grant of a writ of mandamus, but conclude that prohibition relief was improperly granted, as Clark County's participation in the budgeting process does not involve the exercise of judicial functions. As a result, we affirm the district court's order in part and reverse in part, for the limited purpose of the district court's correction of its order so that the relief provided through a writ of prohibition is achieved by issuing a writ of mandamus.[7]

CHERRY, C.J., and SAITTA, GIBBONS, HARDESTY, and PARRAGUIRRE, JJ., concur.

PICKERING, J., concurring in part and dissenting in part:

Mandamus is an extraordinary remedy. It commands—mandates—that an act be performed, exactly as ordered, no questions asked. Mandamus will not issue unless the act to be compelled is "ministerial," *Collier v. Legakes*, 98 Nev. 307, 310, 646 P.2d 1219, 1221 (1982), that is to say, a matter of duty,

---

[7]Having considered the parties' remaining arguments, we conclude that they either lack merit or need not be addressed in light of the basis for our resolution of this matter. Additionally, we vacate the stay of the district court's order imposed by our January 5, 2012, order.

NRS 34.160, not discretion. *Round Hill Gen. Imp. Dist. v. Newman*, 97 Nev. 601, 603, 637 P.2d 534, 536 (1981).

In upholding mandamus in this case, the majority decides that Clark County must annually allocate 3.5 cents of every $100 of assessed valuation on all property in the county to the Southern Nevada Health District (SNHD). This is not what NRS 439.365 says. It says that Clark County must annually allocate ''an amount that *does not exceed*'' that sum to SNHD. NRS 439.365(2) (emphasis added). ''Does not exceed'' or ≤ means something different from ''equals'' or = both linguistically and mathematically. The majority cites witness testimony during the hearings on Assembly Bill 380 to support its singular reading of NRS 439.365.[1] But witness testimony in support of a bill should not be used to rewrite statutory text, or to create an ambiguity the statute's text does not reveal. ''[L]egislative history—no matter how clear—can't override statutory text.'' *Hearn v. Western Conf. of Teamsters Pension Fund*, 68 F.3d 301, 304 (9th Cir. 1995).

More troubling, resolving this dispute by means of mandamus says that neither Clark County nor anyone else has any discretion when it comes to SNHD's operating budget once SNHD sets it.[2] Per the majority, Clark County's obligation to allocate 3.5 cents of every $100 of assessed valuation in the county to SNHD exists without regard to demonstrated need, availability of federal and private funds, and competing demands for government services. So read, NRS 439.365 is in conflict with the Local Government Budget and Finance Act, NRS 354.470-354.626, to which NRS 439.365(1)'s text and calendaring provisions seem deliberately tied. While I recognize that the appellants did not directly invoke the Local Government Budget and Finance Act in support of their appeal, this court nonetheless ''has a duty to construe statutes as a whole, so that all provisions are considered together and, to the extent practicable, reconciled and harmonized.'' *Cromer v. Wilson*, 126 Nev. 106, 110, 225 P.3d 788, 790 (2010); *NAIW v. Nevada Self-Insurers Association*, 126 Nev. 74, 84, 225 P.3d 1265, 1271

---

[1]The majority also cites NRS 387.195, the school funding statute, as support for its reading of NRS 439.365. Unlike NRS 439.365, NRS 387.195 is unqualified in its allocation and does not use NRS 439.365's ''does not exceed'' qualifying language. NRS 387.195 does not support, rather, it undermines, the majority's reading of NRS 439.365.

[2]That SNHD determines its demand formulaically, not by reference to its actual or projected operating expenses or other available funds, is suggested by the limited record available. Thus, SNHD initially contended that its operating budget and, hence, Clark County's mandatory funding obligation, equaled $19,870,482; it came up with that number mathematically, by applying the ''3.5 cents on each $100 of assessed valuation'' provided for in NRS 439.365(2) to the assessed valuation of all taxable property in Clark County. It recalculated that number upward by $1,690,000 after the May 26, 2011, decision in *Clean Water Coalition v. The M Resort*, 127 Nev. 301, 255 P.3d 247 (2011), augmented Clark County's operating funds.

(2010) ("We presume that the Legislature enact[s a new] statute with full knowledge of existing statutes relating to the same subject." (quotation omitted)).

Statutory construction does not proceed in a vacuum. Clark County is a local government and as such is fully subject to the Local Government Budget and Finance Act, NRS 354.470-354.626, whose purposes are, among others, "[t]o provide for the control of revenues, expenditures and expenses in order to promote prudence and efficiency in the expenditure of public money" and "[t]o provide specific methods enabling the public, taxpayers and investors to be apprised of the financial preparations, plans, policies and administration of all local governments." NRS 354.472(1)(d), (e). The Act defines *"budget"* as "a plan of financial operation embodying an estimate of *proposed* expenditures and expenses for a given period and the *proposed* means of financing them." NRS 354.492 (emphasis added). Under NRS 354.596, Clark County's "budget" is "tentative" and must be submitted "[o]n or before April 15" of each year to the Department of Taxation, NRS 354.596(2), while "notice of the time and place of a public hearing on the tentative budget" must be provided, NRS 354.596(3), "at which time interested persons must be given an opportunity to be heard." NRS 354.598(1). Only after the public hearing is held (on the third Monday in May, NRS 354.596(4)(a)), and then only upon "the favorable votes of a majority of all members of the governing body," NRS 354.598(2), does Clark County's "budget" move from a tentative budget presenting "proposed expenditures" to final.

NRS 439.365 is a budgeting and funding statute and, as such, should be read in the context of the Local Government Budget and Finance Act, NRS 354.470-354.626. Thus, NRS 439.365(1) provides that SNHD "shall prepare an annual operating budget," that it "shall submit the budget to the board of county commissioners before April 1 for funding for the following fiscal year," and that "[t]he budget must be adopted by the board of county commissioners as part of the annual county budget." What I take this to mean is that SNHD is tasked with preparing a "budget"—that is, "an estimate of proposed expenditures and expenses" for the coming year, NRS 354.492—that it must submit to Clark County by April 1. NRS 439.365(1). Two weeks later, on April 15, Clark County must in turn file its budget, presumably incorporating SNHD's submission, and schedule and give notice of the public hearing required to be held in late May. NRS 354.596. But neither the budget SNHD submits to Clark County nor the budget Clark County files and submits to public hearing becomes final until publicly aired and voted on by "all members of the governing body," NRS 354.598(2), that is, the Clark County Commission.

For the Local Government Budget and Finance Act public hearing process to be meaningful, submission of a true operating budget, one calculated with reference to need, not entitlement, is essential. I thus reject SNHD's reading of NRS 439.365 as imposing a mandatory funding obligation in an amount automatically equal to the number arrived at "by multiplying the assessed valuation of all taxable property in the county by the rate of 3.5 cents on each $100 of assessed valuation." NRS 439.365(2). SNHD's interpretation not only reads the words "an amount that does not exceed" out of NRS 439.365(2), it fails to harmonize NRS 439.365 with the provisions of the Local Government Budget and Finance Act.

Ordinarily, budgeting is discretionary and inherently legislative, making it inappropriate for mandamus relief. *Cf. Young v. Board of County Comm'rs*, 91 Nev. 52, 56, 530 P.2d 1203, 1206 (1975) (dictum); *see also Co. of Washoe v. City of Reno*, 77 Nev. 152, 155-57, 360 P.2d 602, 603-04 (1961) (reversing district court issuance of writ of mandamus where the city could sue the county for damages for breach of statutory obligation to fund road work). However, an official's failure to exercise discretion when its exercise is required can violate a duty, permitting mandamus relief to compel the official to undertake the discretionary review process, though not to dictate its outcome. *Collier*, 98 Nev. at 310, 646 P.2d at 1221. And this court has recognized that budgetary requests, when stipulated as reasonable, can become a duty. *Young*, 91 Nev. at 56, 530 P.2d at 1206. The record in this case is extremely limited, and what there is suggests that both SNHD, *see supra* note 2, and Clark County,[3] have taken categorical positions, rather than engage in a dialogue over reasonable operating budget needs. This suggests the possibility of relief under theories recognized in cases like *Collier*, *Young*, or *County of Washoe*, as well as fact-based questions as to whether SNHD has improperly included capital expenditures in its operating expenses. Given the importance of these issues, and their sensitivity, I would reverse and remand for discovery and further development as to the budgeting process involved in this case.

I agree with the majority that prohibition is inappropriate in this case. However, I do not agree with the majority's reading of NRS 439.365 or its issuance of mandamus on this record and therefore respectfully dissent.

---

[3]From what appears in the limited record available, Clark County allocated SNHD only $5,692,495, when it had funded SNHD at between three and four times that number in the past; no explanation is provided as to how the new number was derived.