THE STATE OF NEVADA ex rel. S. W. McGUIRE, RESPONDENT, v. THOMAS A. WATERMAN, APPELLANT.

MANDAMUS—REVIEW OF ACTION OF REGISTRY AGENTS. Under sections six and eight of the Registry Law, (Stats. 1869, 140) the functions of the writ of mandamus are enlarged so as to allow a hearing of evidence, and an enforcement by such writ of the proper registration of an elector, or the erasure of a name improperly registered: being in effect a review of judicial or discretionary action of the Registry Agent.

MANDAMUS NOT ISSUED WHEN FRUITLESS. A mandamus will not issue to require the performance of a duty, unless it appear that the defendant has it in his power to perform the duty required.

ELKO COUNTY REGISTRATION. Where the Act to create Elko County (Stats. 1869, 153) required certain Registry Agents to register the names of electors before June 21st, 1869; and after that date a mandamus was issued to compel one of them to erase names improperly registered: Held, that the Registry Agent was functus officio; that the writ consequently could not be complied with, and that it was therefore improperly issued.

APPEAL from the District Court of the Sixth Judicial District, Lander County.

*Earl & Smith*, for Appellant.

I. To authorize the issuance of mandamus, it must appear that defendant yet has it in his power to perform the duty required of him. (12 Barb. 217; 15 Barb. 607; 24 Barb. 166.; 11 How. Pr. 89; 7 Abb. Pr. 34.)

II. The writ will not issue where it would be unavailing from want of power in the defendant to comply. (12 Barb. 217; 15 Barb. 607; 24 Barb. 166; 11 How. Pr. 89; 18 How. Pr. 305; 4 Abb. Pr. 84; 28 Cal. 429.)

III. The writ will not be allowed in cases where corporations and ministerial and other officers have acted judicially, nor where they have a discretion with regard to the performance of an act. (1 Den. 617; 12 Barb. 446; 15 Barb. 608; 22 Barb. 114; 39 Barb. 651; 12 Johns. 414; 19 John. 259; 9 Wend. 508; 1 Hill, 362; 4 Cal. 177; 10 Cal. 376; 22 Cal. 34.)

IV. The writ will not lie to a Court acting under a special commission which has expired by its own limitation previous to the

application for the writ. (20 Wend. 108; Stats. 1869, 153, Secs. 3–5.)

V. The alternative writ was not served till June 22d, 1869, twenty-two days after the date in which defendant is required by law to certify the registry list to the County Commissioners, and one day after the election held under the Act of the Legislature organizing the County of Elko. The order for the peremptory writ was made August 10th, 1869, fifty days after the organization of the County of Elko, and thirty-four days after the county and township officers had entered upon their official duties. The writ therefore will not lie: First, because it is not in the power of defendant to comply; second, because it would be unavailing from want of power in defendant to comply.

*H. Mayenbaum*, for Respondent.

By the Court, JOHNSON, J. :

The controversy in this case grows out of certain proceedings had under "An Act to Create the County of Elko, and to Provide for the Organization thereof," approved March 5th, 1869, (Stats. 1869, 153) wherein the immediate organization of said county was conditional upon there being registered more than one thousand legal voters therein, previous to the twentieth of May, 1869. It appears that Thomas A. Waterman was duly appointed and qualified as one of the Registry Agents, authorized by section three of said Act; and that within the periods prescribed therein, he registered the names of four hundred and twenty-six persons, as qualified to vote in such County of Elko.

On the nineteenth of June, 1869, Maguire, the relator herein, presented his petition, under oath, to said District Court, in which among other averments it is alleged that " he, the petitioner, is a qualified elector of said county; that of the several persons registered by Waterman, as Registry Agent aforesaid, Reuben S. Dickerson and one hundred and twenty-four others, (whose names are stated) are not legal or qualified voters, nor entitled to be so registered; and that said Registry Agent registered the names of said persons in fraud of the Act before cited; that on the sixteenth of

June, 1869, he duly filed with said Registry Agent, affidavits in writing—that is to say, one affidavit for each of said persons so illegally registered—which affidavits set forth, that said S. W. McGuire is a qualified elector of said county ; that said persons, or either of them, or any of them, never were nor are they now, nor will they ever be, on the said twenty-first day of June, 1869, citizens of the United States and the State of Nevada. That they, or either, or any of them, will not on said day have actually resided in said State six months next preceding said day ; that they, and each of them, left the said County of Elko and State of Nevada, with the purpose of remaining absent therefrom ; that the said affiant then and there objected in writing to the right to vote and the registration of said persons and each of them ; and that he then and there, challenged each of them on the said grounds, and demanded of said Registry Agent to issue a notice or notices to each of said persons to appear and answer said objections according to law, and the questions put to them by the said Registry Agent ; and that each of them be stricken from said registry ; and this affiant then and there demanded of said Registry Agent to issue and sign a notice to each of said persons, notifying them to appear before him, the said agent, at his said office, at the time therein to be specified by said agent, then and there to answer under oath such questions as may be propounded to each of them, touching their qualifications as electors.

"That the said Registry Agent then and there neglected and refused, and ever since has neglected and refused, and still neglects and refuses, to issue such notices, with the intent to deprive this affiant of his right to challenge said illegally-registered persons, and with the intent to force the organization of said county by illegal voters, and in fraud of said Act.     *     *     *     That without said persons so illegally registered, there are not one thousand persons registered in said County of Elko. Wherefore, this affiant prays that an alternative writ of mandamus issue to compel said Registry Agent to issue such notices, and to erase from said registry the names of said persons immediately after service of such writ, or show cause before said Court why he has not done so." Thereupon, the Court issued the writ in conformity with the prayer of petitioner,

making the same returnable on the thirtieth—service of which was had on the twenty-second of said month. Waterman made his showing by way of answer; also, moved to discharge the writ upon several grounds; but from the view we take of these proceedings, it is unnecessary to pursue its history further, than to state that on the tenth of August, after the trial and determination of certain issues of fact by a jury, the Court awarded judgment that a peremptory writ of mandate be issued to said Waterman, as Registry Agent, requiring and compelling him to erase forthwith from said registry the names of the persons aforesaid, to wit: Reuben S. Dickerson, and the one hundred and twenty-four others named in said petition; and from said judgment Waterman brings his appeal upon the judgment roll alone.

Under sections six and eight of the "Act to Provide for the Registration of the Names of Electors, and to prevent Frauds at Elections,".(Stats. 1869, 140) the extent of the power of District Courts and Judges thereof to inquire into and determine, by means of the writ of mandamus, the right of registration, is in one particular enlarged beyond the ordinary functions of such writ as understood at common law, and under our general statutes—in this, that it authorizes the Court or Judge to hear the evidence and enforce, by peremptory writ, the proper registration of an elector, or to erase from the registered list of electors the name of any person therein registered—which is, in effect, a review of matters wherein the Registry Agent has acted *judicially* and *discretionally* in granting or refusing the application. But otherwise, in all essential respects, the writ and proceedings under it stand unaffected by the Act in question, and must be governed by those general principles and rules applicable thereto. Among them are: 1st. To authorize the issuance of the writ of mandamus, the act required to be performed must be a duty resulting from the office, and enjoined by law. (Prac. Act, title *Mandamus.*) 2d. It must appear that defendant yet has it in his power to perform the duty required of him; and the writ will be refused if it be manifest that it would be vain and fruitless, or cannot have a beneficial effect. (Tapping on Mandamus, 17; *People* v. *Supervisors of Greene*, 12 Wend. 217; *People* v. *Supervisors of Westchester*, 15 Wend. 607; *Colo-*

*nial Life Ass. Co.* v. *Board of Supervisors, New York*, 24 Wend. 166.)

The Act creating the County of Elko, in section three provides that the Registry Agents appointed by the Board of County Commissioners shall have power and authority, and it shall be their duty, previous to the twentieth day of May, 1869, to register all the legal voters properly entitled to be registered within their districts or precincts, offering to do so. Such registration shall be conducted in all respects under the provisions of the registry laws of this State. Each of said Registry Agents shall, prior to the first of June, 1869, certify to said Board of County Commissioners the number of voters by each registered; also the registry lists from which the certificate is made, or a copy thereof." It is furthermore provided in said Act, section four, that "if it shall appear from the certificates of the Registry Agents, supported by an examination of the registry lists, (or a copy thereof) that more than one thousand voters have been registered within the county, such fact shall be properly noted, or entered on the minutes of the proceedings of said Board, and the Board shall make an order for the organization of the county, by an election of county and township officers. * * * If it appears that the number of registered voters is less than one thousand, the election for county officers shall be held on the day of the general election, in the year A.D. 1870, * * * *provided,* the special election herein provided for, (which under section five, is fixed for the third Monday of June, 1869, being the twenty-first day of the month) if held, shall be so held under the registration herein provided for. A new registration shall be made for the election in the year 1870." * * Section eight of the Registration Act before cited further defines the duties of the Registry Agents, and among others therein enumerated, they are required to hear and determine objections made in a given way, to any person registered and notified of such objections, "until six o'clock P.M. on the fourth day previous to the day of election." But in respect to any and all of the questions arising upon matters stated in the petition, concerning the duty of such Registry Agents, they are subordinate to, and must follow the determination of the leading and principal question raised by this

appeal.   Was it a duty resulting from his office as Registry Agent and within the power of Waterman to comply with the mandate of the District Court of August 10th, to erase the names of the persons named from such registry-roll?   It has been shown that the creation of the office and the duties imposed upon the Registry Agents was for a special purpose, having reference to the organization of the county, and the special election of the twenty-first of June.   No other election was authorized or could possibly occur until the general election in 1870, and then, as we have shown by the law, it was subject to a new registration, with which these officers under their original appointment could have no duties to perform.   Thus it is seen, that the authority and correspondingly the duty of the Registry Agent was covered by a special commission which at furthest could not extend beyond the day appointed for the special election, the twenty-first of June.   As before stated, the alternative writ was served on the twenty-second of June, the day following the appointed time of such election, whilst the mandatory writ was not directed to issue until the tenth of August, when such Registry Agent, even at the earliest of these dates, was *functus officio.*   The writ will not be granted in such a case.   (*The People* v. *Monroe,* Oyer and Terminer, 20 Wend. 108.)

Although the matters stated in the petition may show a disregard of official duty by such Registry Agent, yet it was beyond his power to correct his action or in fact to act in any way as a Registry Agent when the first writ was served; much less at the later time when a peremptory writ was ordered.   The acts we have cited furnished a sufficient reply to the petition, and inquiry need have extended no further to show that the commands of the later writ could not be complied with, for he was no longer an officer under the law, and that "its issuance would," in the language of the authorities herein cited, "be vain and fruitless, and could have no beneficial effect."   Hence we conclude that the Court below erred in allowing the peremptory writ, and therefore it is ordered that such judgment be reversed, with directions to dismiss the petition.