*1081 OPINION
By the Court,
Hardesty, J.:
This petition arises out of an ongoing conflict between respondent the Nevada State Board of Equalization, real party in interest the Washoe County Assessor, and taxpayers from the Incline Village and Crystal Bay areas. On March 8, 2006, the Washoe County Board of Equalization issued a general equalization decision for the 2006-2007 tax year, rolling back the taxable valuations of approximately 8,700 properties in Incline Village and Crystal Bay. The Assessor administratively appealed that decision to the State Board of Equalization, which failed to consider the merits of the case until April 2007 and, at that time, remanded the case to the County Board. Petitioners Chuck Otto, V Park, LLC, and Village League to Save Incline Assets (collectively, Taxpayers) now seek a writ of certiorari or mandamus declaring the State Board’s action in remanding the matter to the County Board to be in excess of its jurisdiction or an arbitrary exercise of its discretion.
This petition requires us to consider whether the State Board had jurisdiction to hear the appeal from the County Board’s general equalization decision. We determine that the State Board retained jurisdiction to hear the appeal in April 2007, even though the statutory deadline had expired, because that deadline is directory, meaning that it is advisory rather than compulsory. Nevertheless, the State Board has discretion to remand a matter to a county board only when the record before the State Board is inadequate because of “an act or omission of the county assessor, the district attorney or the county board of equalization.”[1] In this case, the County Board’s minutes were sufficient to enable the State Board’s review. Accordingly, the State Board arbitrarily remanded the matter, and we grant the Taxpayers’ petition for a writ of mandamus.

FACTUAL AND PROCEDURAL BACKGROUND

In 2002, the Assessor physically reappraised properties in Incline Village and Crystal Bay to determine their taxable values for the 2003-2004 tax year. The reappraisals dramatically increased tax assessments for many taxpayers, and they began to question the methods used by the Assessor in developing taxable values. Each *1082 year since 2003, increasing numbers of taxpayers from the Incline Village and Crystal Bay areas have challenged their assessments before the County Board, the State Board, and the courts. For the 2006-2007 tax year, the year at issue in this case, the number of challenges increased exponentially due, at least in part, to a district court decision in a case originating from the taxpayer challenges to the 2003-2004 assessments. Understanding the procedural and factual history of that case, which this court examined in State, Board of Equalization v. Bakst,[2] is necessary for consideration of this petition.
In Bakst, 17 taxpayers challenged the methods used by the Assessor to appraise property in Incline Village and Crystal Bay for the 2003-2004 tax year. The County and State Boards upheld the Assessor’s valuations of the Bakst taxpayers’ properties; however, in January 2006, the district court issued a decision declaring that the Assessor’s methods for creating the taxable values were unconstitutional and, therefore, that the valuations were void. The district court ordered the 17 properties’ taxable values for the 2003-2004 tax year rolled back to the values for the 2002-2003 tax year, which the taxpayers had conceded were constitutional. The Assessor and County then appealed to this court.
While the Bakst appeal was pending, based in part on the district court’s reasoning in that case, hundreds of taxpayers in the Incline Village and Crystal Bay areas challenged their property tax assessments for the 2006-2007 tax year,[3] seeking from the County Board rollbacks like those granted to the 17 Bakst taxpayers. In the Bakst appeal, however, this court, issued a stay preventing enforcement of the district court’s order. While the stay order specifically directed the County Board to proceed, based on the reasoning in the district court order, with its consideration of the hundreds of rollback requests, it also enjoined the County Board from implementing any rollbacks during the stay’s pendency. Then, in rendering its determinations of the taxpayer challenges to the 2006-2007 valuations, the County Board found that in approximately 300 cases, the Assessor had used the methodologies that the district court in Bakst had deemed unconstitutional. The County Board therefore ordered the 300 properties’ taxable values rolled back to the values for 2002-2003.
After deciding all of the individual challenges before it, the County Board made the general equalization decision at issue in this petition. Specifically, the County Board determined that by rolling back the 300 properties’ taxable values, it had created an unequal rate of taxation for the 2006-2007 tax year. Accordingly, *1083 under its regulatory duty to “seek to equalize taxable valuation within ... the whole county,”[4] the County Board rolled back the taxable values for the approximately 8,700 other properties in the Incline Village and Crystal Bay areas.
The Assessor administratively appealed the equalization decision to the State Board the next day; he also appealed the County Board’s decisions in the 300 individual Incline Village area cases. The State Board began its annual session for the 2006-2007 tax year on March 27, 2006. At its first session, the State Board, which must decide all cases that will have a “substantial effect on tax revenues” on or before April 15 of each year,[5] held a hearing to determine if any of the cases before it would have a substantial effect on tax revenues. The State Board called upon the Nevada Department of Taxation to present a summary of the cases before it and recommend whether any would have a substantial effect.
The Department presented the State Board with a packet summarizing the cases on appeal to the State Board, noting what percentage of the relevant county’s total assessed value, and presumably its revenue, was affected by each case. The Department’s presentation explained that the 300 individual Incline Village area cases would affect over one percent of Washoe County’s total assessed value and over nine percent of Incline Village’s total assessed value.[6] The Department further noted that the general equalization decision at issue in this petition would affect all properties in the Incline Village area. In oral argument before this court, the State Board noted that the County Board’s equalization decision affected $12 million in revenue.
Despite noting that the amount of revenue affected by the equalization decision was significant, the Department opined that because of this court’s stay, the County Board’s decision was interlocutory in nature. The Department asserted that the finality of the County Board’s decision was dependent upon this court lifting its stay and issuing a decision in Bakst. The Department, noting that the County Board had not issued a written decision, therefore recommended that the State Board find that none of the cases before it for the 2006-2007 tax year would have a substantial effect on revenue. The State Board adopted that recommendation.
*1084 In its session for the 2006-2007 tax year, the State Board heard many appeals, but continued all of the Incline Village and Crystal Bay areas cases while waiting for this court to issue its decision in Bakst. This court issued that decision in December 2006. In January 2007, the County Board issued its written equalization decision rolling back the 8,700 properties’ taxable values. The State Board then held its first hearing on the merits of the Assessor’s appeal in April 2007.
The State Board was unsure how to handle the appeal. Because it was an appeal of a general equalization decision and not of a particular case, it was not clear who the parties were or what the State Board was supposed to consider. The State Board decided that, as the appellant, the Assessor was a party and that all of the 8,700 taxpayers affected by the equalization decision were the respondents. The State Board permitted Village League to Save Incline Assets, Inc., to argue on the 8,700 taxpayers’ behalf.[7]
The State Board asked the Assessor and Village League several questions, attempting to discern the legal and factual bases for the County Board’s general equalization decision. Village League asserted that the County Board had rolled back the 8,700 properties’ taxable values because the Assessor had used methods that this court declared unconstitutional in Bakst to develop their taxable values. The State Board questioned whether the record demonstrated the use of unconstitutional valuation methods for the 8,700 properties.
After searching the minutes of the County Board meeting at which the equalization decision was made for evidence that unconstitutional methods had been used on the 8,700 properties, the State Board concluded that the record contained insufficient evidence to enable it to consider the propriety of the County Board’s decision to roll back the 8,700 properties’ taxable values. The State Board remanded the case to the County Board so that it could further develop the record. In the State Board’s written remand order, it compelled the County Board to provide evidence regarding which of the 8,700 properties’ values were developed using the unconstitutional methods.
The Taxpayers, arguing that the State Board had no jurisdiction to act on the Assessor’s appeals after October 1, 2006, and no authority to remand the matter to the County Board, now petition this court for a writ of certiorari or mandamus instructing the State Board to rescind the remand and dismiss the Assessor’s appeal and instructing the Washoe County Treasurer to comply with the *1085 County Board’s equalization decision. The State Board, Washoe County, and the Assessor have filed responses, as directed.

DISCUSSION

Extraordinary writs of certiorari can prevent action in excess of a lower tribunal’s jurisdiction,[8] while mandamus is available to remedy a lower tribunal’s failure to perform a duty mandated by law or arbitrary exercise of discretion.[9] Because the Nevada Constitution grants this court power to issue extraordinary writs without significant limitation on when writs should issue, the decision to grant a petition for extraordinary writ relief is entirely within our discretion.[10] We will grant a petition for extraordinary relief only when the petitioners have no adequate legal remedy, such as an opportunity to appeal.[11]
In this case, we note that the Taxpayers will not have the opportunity to appeal or petition the court for judicial review of the State Board’s decision to remand.[12] Because there is no adequate legal remedy if the State Board’s remand was in error, we will consider this petition for extraordinary writ relief.

General equalization is an appealable action of the County Board

Before considering whether the State Board had jurisdiction to hear the Assessor’s appeal at the time it did, we must determine whether the Assessor could administratively appeal the County Board’s decision in the first instance. Under NRS 361.360(1), “[a]ny taxpayer aggrieved at the action of the county board of equalization in equalizing, or failing to equalize, the value of his property, or property of others, or a county assessor, may file an appeal with the State Board of Equalization.” Therefore, a taxpayer or an assessor may appeal a county board’s decision regarding a *1086 property’s taxable valuation to the State Board.[13] In this case, although the County Board’s decision was one regarding general equalization, it was an action of the County Board and therefore appealable to the State Board by the Assessor.

The State Board had jurisdiction to hear the appeal from the County Board’s decision because the statutory deadlines for action by boards of equalization are directory

Two statutory deadlines establish dates by which the State Board is directed to complete its business. Specifically, the State Board is to make decisions on matters substantially affecting tax revenues by April 15 of each year,[14] and all other State Board business is to be completed by October 1 of each year.[15]
The Taxpayers note that over 100 years ago, this court held, in State v. Central Pacific Railroad Co., that the then-existing statutory deadline for the State Board was mandatory.[16] In Central Pacific,, this court expressly stated, ‘ ‘The term of the [State Board] is fixed by law, and its duration limited. . . . [Its] powers ceased on the first Monday in October.”[17] This court then voided an action taken by two members of the State Board before the end of the statutory term, but after it had adjourned for the year.[18] Because the Central Pacific decision was based in large part on the taxpayer’s failure to pursue its claim before the State Board adjourned, that decision lacks analysis regarding the statutory deadline’s mandatory or directory nature.[19] Therefore, we take this opportunity to reconsider whether, in light of the current statutory framework, the State Board’s deadlines are mandatory or directory.
This court has long held that when a statutory time limit is material, it should be construed as mandatory unless the Legislature intended otherwise.[20] It follows, then, that statutes creating time *1087 or manner restrictions are generally construed as mandatory.[21] In contrast, statutes are typically considered directory, or advisory only, when they require performance within a reasonable time or provide specifically that substantial compliance is sufficient.[22] Generally, statutory deadlines in tax statutes that are developed to protect taxpayers are mandatory, while statutory deadlines that provide tax officials with guidelines for the performance of their duties are directory.[23] As with most issues pertaining to statutory construction, our goal is to determine and implement the Legislature’s intent.[24] In determining whether a statute is mandatory or directory, we will look to the statutory scheme, “as well as policy and equity considerations.’'[25]
Looking first to the language of the statute, NRS 361.380(1) provides:
The State Board of Equalization shall conclude the business of equalization on cases that in its opinion have a substantial effect on tax revenues on or before April 15. Cases having less than a substantial effect on tax revenues may be heard at ad *1088 ditional meetings which may be held at any time and place in the state before October 1.
The statute establishes that the State Board “shall conclude” as to cases with substantial effects on tax revenues before April 15. Use of the word “shall” usually, but not always, makes the action mandatory.[26] Next, the statute allows the State Board to hear other cases anytime before October 1. Although the second sentence uses the permissive “may,”[27] it gives permission to hold meetings only before a certain date. Thus, while not conclusory, the language of the statute suggests that the deadlines are mandatory.
Another statute, however, indicates that the Legislature intended NRS Chapter 361’s deadlines to be permissive. NRS 361.330 specifically rejects the proposition that failure to comply with time restrictions in NRS Chapter 361 voids assessments or collection of taxes. NRS 361.330 provides, in pertinent part:
No assessment of property is invalid, and no collection of taxes may be enjoined, restrained or ordered to be refunded, on account of any failure . . . [t]o do any act required by this chapter within the time so required, if notice and an opportunity to be heard were afforded generally to the class of taxpayers affected by the act required to be done.
The plain language of NRS 361.330, upholding an assessment or collection of taxes despite the failure to comply with any statutory deadline in Chapter NRS 361, strongly indicates that the Legislature intended the deadlines in Chapter 361 to be directory.
Finally, we consider the implications of construing the deadlines as mandatory or directory. If the statutory deadlines at issue are mandatory, then in a year when property assessments are plagued with problems, real or perceived, and multitudes of taxpayers wish to contest their assessments, the State Board might not have adequate time to hear all taxpayer appeals. Construing the statutory deadlines as mandatory would then result in denying taxpayers the opportunity to challenge assessments, whereas construing the deadlines as directory would allow the boards to hear all of the taxpayer appeals. This court may construe a statute as directory to prevent “ ‘harsh, unfair or absurd consequences.’ ”[28]
*1089 Having considered the language of the statute at issue, the Legislature’s intent as embodied in NRS 361.330, and the practical effect of our determination, we conclude that the Legislature intended the statutory deadlines for the State Board to be directory, and therefore, we overrule our prior holding otherwise in Central Pacific. Accordingly, as the Taxpayers had notice and an opportunity to be heard regarding the State Board’s remand, we conclude that, in April 2007, the State Board retained jurisdiction to hear the Assessor’s appeal of the County Board’s decision to equalize property values in the Incline Village and Crystal Bay areas.[29]

The State Board arbitrarily remanded the County Board’s equalization decision

NRS 361.360(6) allows the State Board to remand a matter to a county board of equalization if the record is inadequate because of “an act or omission of the county assessor, the district attorney or the county board of equalization.” The Taxpayers argue that neither the Assessor, nor the district attorney, nor the County Board committed an act or made an omission allowing for remand. This court has not addressed what constitutes an act or omission under NRS 361.360(6), but the statutory language is clear and unambiguous: the State Board may remand a case to develop the record if one of the county actors caused the record to be insufficient for its review.
When the State Board considered the County Board’s equalization decision, the record contained, at least, the minutes of the County Board meeting at which the equalization decision was made and an audio recording of the meeting. The State Board also had the record for each of the 300 individual cases that the Assessor had appealed. The Assessor acknowledged to the State Board that the records of those individual cases, some of which the State Board had considered in previous meetings, were a part of the record that the State Board could consider regarding the general equalization decision. Having examined that record, the basis for the County Board’s equalization decision is clear.
*1090 NAC 361.624 places a duty on county boards to equalize taxable valuations within a geographic area. According to the record, as a result of the County Board’s decisions to roll back the taxable values for 300 Incline Village area properties, 300 properties in that area were being taxed based on the 2002-2003 values and the other 8,700 were being taxed based on the 2006-2007 values. The County Board concluded that the disparity in taxable values required it to equalize. The County Board considered two methods of equalizing: raising the 300 properties’ taxable values or lowering the 8,700 properties’ taxable values. It chose to lower the 8,700 properties’ taxable values by rolling them back to the 2002-2003 values.
Instead of considering the merits of the County Board’s decision, the State Board disregarded the record and remanded the matter. On remand, the State Board insisted that the County Board provide specific evidence regarding which of the 8,700 properties had been valued using the unconstitutional methodologies, explain how regulations adopted by the Tax Commission in 2002 and 2004 affected the development of the 2006-2007 values, and clarify why it relied on the Bakst opinion when it rolled back the values of the 8,700 properties.
How the 8,700 properties were individually valued, however, was not the question the County Board was considering when it made its equalization decision. The County Board considered the Assessor’s individual valuation methods for the 300 properties. The State Board conceded at oral argument before this court that the County Board made specific factual findings that unconstitutional methods had been used to create the 2006-2007 values for those 300 properties. Having considered how the 300 properties had been valued, and after deciding to reduce their taxable values for 2006-2007 to the values for 2002-2003, the County Board reduced the taxable values for the other 8,700 properties to make them equal. Even if the methods used to value the 8,700 properties were somehow relevant, the Taxpayers pointed the State Board to the record before it regarding the Assessor’s 2003-2004 methods for reappraisal, which included the unconstitutional methods. Thus, by requiring the County Board to provide specific evidence that unconstitutional methods had been used to determine the 2006-2007 values for each of the 8,700 properties, the State Board disregarded the record before it and the County Board’s reasoning.
The State Board next demanded that the County Board address the effect of regulations adopted by the Tax Commission in 2002 and 2004 on the methods for developing the 2006-2007 values. As with the requirement that the County Board address the use of unconstitutional methods, this demand disregarded the basis for the County Board’s equalization decision. The regulations’ effects might have been relevant to the appeals regarding the 300 individ *1091 ual cases, in which the County and State Boards were addressing how the Assessor had valued the properties. But, in the equalization decision, the regulations were not raised before the County Board, and the failure to address them did not make the record inadequate, since the County Board’s focus was on equalizing the disparity in taxable values created by the rollback. Remanding for the County Board to address those regulations was therefore inappropriate.
Finally, the County Board’s minutes clearly state its opinion that whether the 8,700 properties had been valued using the methodologies invalidated by Bakst was irrelevant to its decision to equalize. The equalization decision was affected by this court’s opinion in Bakst because the 300 properties’ value reductions were based on the reasoning of the district court order in the Bakst case. If this court had reached the opposite outcome, those 300 properties’ values would not have been reduced and there would have been no need for the reduction of the other 8,700 properties’ values because that particular equalization problem would not have existed. Thus, the application of the Bakst opinion was clear from the record, and the State Board’s attempt to remand on that matter was improper.
The State Board’s remand order disregarded the record and the reasoning of the County Board. The State Board has pointed to no act or omission rendering the record before it inadequate to consider the merits of the County Board’s equalization decision. Therefore, the State Board arbitrarily exercised its discretion when it remanded this matter to the County Board, and writ relief is substantively warranted.

CONCLUSION

Because the State Board retained jurisdiction over the Assessor’s appeal, we deny the Taxpayers’ request for a writ of certiorari. We grant the Taxpayers’ petition with respect to their alternative request for a writ of mandamus, however, because they demonstrated that they are without other adequate legal remedy and that the State Board arbitrarily exercised its discretion. Therefore, we direct the clerk of this court to issue a writ of mandamus instructing the State Board to vacate its remand order and proceed with its consideration of the Assessor’s appeal of the County Board’s equalization decision on the merits.[30]
Gibbons, C. J., Maupin, Parraguirre, Douglas, Cherry and Saitta, JJ., concur.

 NRS 361.360(6).

 122 Nev. 1403, 148 P.3d 717 (2006).

 Assessments for the 2006-2007 tax year were distributed to the taxpayers in December 2005.

 NAC 361.624.

 NRS 361.380(1) (“The State Board of Equalization shall conclude the business of equalization on cases that in its opinion have a substantial effect on tax revenues on or before April 15.”).

 This information was provided to this court pursuant to our order that the State Board supplement the record. Village League v. State, Bd. of Equalization, Docket No. 49358 (Order, May 29, 2008). The State Board filed nine volumes to comply with our request, and the Taxpayers objected to the filing, arguing that the State Board had provided us with extraneous information. After reviewing the objection and the State Board’s response thereto, we conclude that the State Board’s filing was appropriate.

 It is not clear from the record why the State Board permitted Village League to argue as the respondent in the Assessor’s appeal. The notice of administrative appeal itself does not list a responding party.

 NRS 34.020(2).

 NRS 34.160; State v. Dist. Ct., 116 Nev. 374, 379, 997 P.2d 126, 130 (2000).

 State ex rel. Dep’t Transp. v. Thompson, 99 Nev. 358, 360 n.2, 662 P.2d 1338, 1339 n.2 (1983); Nev. Const, art. 6, § 4.

 NRS 34.020(2) (providing that a writ of certiorari is available only when no right to appeal exists); NRS 34.170 (recognizing that mandamus is available when no plain, speedy, and adequate legal remedy exists); Pan v. Dist. Ct., 120 Nev. 222, 224-25, 88 P.3d 840, 841 (2004) (explaining that an appeal is generally an adequate legal remedy).

 See, e.g., Ayala v. Caesars Palace, 119 Nev. 232, 235, 71 P.3d 490, 492 (2003).

 Mineral County v. State, Bd. Equalization, 121 Nev. 533, 538, 119 P.3d 706, 709 (2005) (Hardesty, J., dissenting).

 NRS 361.380(1).

 Id.

 21 Nev. 270, 274, 30 P. 693, 694 (1892).

 Id.

 Id.

 See, e.g., Corbett v. Bradley, 7 Nev. 106, 108 (1871); Leven v. Frey, 123 Nev. 399, 406-07, 168 P.3d 712, 717 (2007).

 See Corbett, 1 Nev. at 108 (“It should never be held that any specific requirement of a statute may be dispensed with, except when it is clearly manifest the [L]egislature did not deem a compliance with it material, or unless it *1087 appears to have been prescribed simply as a matter of form. . . . If it be clear that no penalty was intended to be imposed for a non-compliance, then, as a matter of course, it is but carrying out the will of the [Ljegislature to declare the statute in that respect to be simply directory.”).

 Leven, 123 Nev. at 408, 168 P.3d at 718.

 See id. at 407-08, 168 P.3d at 718 (“Although statutes allowing for a ‘reasonable time’ to act are subject to interpretation for substantial compliance, those with set time limitations are not.”); The Fabry Partnership v. Christensen, 106 Nev. 422, 425, 794 P.2d 719, 721 (1990) (holding that substantial compliance with the statute requiring recordation of a limited partnership agreement was sufficient to create a limited partnership because the statutory scheme expressly allowed for substantial compliance and placed no time limit on filing).

 See G.L. Clark, Annotation, Provisions of Tax Statute as to Time for Performance of Acts by Boards or Officers as Mandatory or Directory, 151 A.L.R. 248 (1944) (“[W]here the purpose of the statute is to protect the taxpayer, the provision as to the time when an act is to be performed by a tax official or board is ordinarily construed to be mandatory, especially where there are negative words in the statute that the act shall not be done at any other time. On the other hand, where the purpose of the statute is not to protect the taxpayer, but merely to set up a guide for the tax officials, a provision as to the time when an act is to be performed by a tax official or board is ordinarily construed to be merely directory, especially where there are no negative words in the statute that the act shall not be done at any other time.”); 3 Norman J. Singer, Statutes and Statutory Construction § 57:20, at 66 (6th ed. 2001) (“Statutory directions to taxing officials are usually directory because they are directions to public officers for the purpose of securing prompt and orderly conduct of business.”).

 Corbett, 7 Nev. at 108.

 Leven, 123 Nev. at 406-07, 168 P.3d at 717.

 Tarango v. SIIS, 117 Nev. 444, 451 n.20, 25 P.3d 175, 180 n.20 (2001); Black’s Law Dictionary 493 (8th ed. 2004) (defining “directory requirement,” and in so doing, noting that “shall” can be directory even though it is more often mandatory).

 See Tarango, 117 Nev. at 451 n.20, 25 P.3d 180 n.20.

 See Leven, 123 Nev. at 407, 168 P.3d at 717 (noting that this court may apply the related doctrine of substantial compliance to prevent such circumstances) (quoting 3 Norman J. Singer, Statutes and Statutory Construction § 57:19, at 58 (6th ed. 2001)).

 Although the State Board did not file a petition for writ relief, in its answer to the Taxpayers’ petition, it argues that if this court determines that the State Board was without jurisdiction to consider the appeal of the general equalization decision after its statutory deadline, we must also hold that the County Board was without jurisdiction to decide to make the decision to equalize eight days after its statutory deadline. We note that our determination regarding the directory nature of the statutory deadlines for boards of equalization applies equally to the County Board’s deadline. See NRS 361.340(11) (providing that the County Board “shall conclude the business of equalization on or before the last day of February of each year”).

 We deny, at this stage, the Taxpayers’ request for a writ directing the Washoe County Treasurer to comply with the County Board’s equalization decision.